ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DALE D. GRITTEN, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-4053-JAR |
| | ) |
| PTMW, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Dale Gritten, Jr. alleges claims under the Americans with Disabilities Act ("ADA") the Family and Medical Leave Act ("FMLA") and for unemployment compensation. The Court now considers defendant PTMW Inc.'s Motion for Summary Judgment (Doc. 34). The motion is fully briefed and the Court is prepared to rule. For the reasons explained in detail below, the Court grants in part and denies in part the motion for summary judgment.

## I.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

---

[1] Fed. R. Civ. P. 56(c)(2).

[2] *City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the nonmoving party."[3] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[4] An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[6] In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[8] The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[9] Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[3] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[4] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[5] *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[6] *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[7] *Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8] *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[9] *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[10] To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[11] "The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but the content or substance of the evidence must be admissible."[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14] When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[15]

## II. Statement of Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or taken in the light most favorable to plaintiff. Because defendant failed to come forward with any evidence in support of

---

[10]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Adams,* 233 F.3d at 1246.

[12]*Id.*

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[15]*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

its summary judgment motion,[16] either in the motion itself or in response to plaintiff's statements of uncontroverted facts, the Court deems uncontroverted several of plaintiff's additional statements of fact to the extent they are supported by the record.

Plaintiff Dale Gritten was employed by defendant PTMW for nine years and seven months from September 16, 1996 to April 14, 2005 as a full-time laborer in the shipping and receiving department. That position involved assembling and packaging parts, and getting them ready for assembly.

Beginning Sunday, February 13, 2005, plaintiff was hospitalized for eleven days. Midway through his hospitalization, he was diagnosed with Gullian-Barre Syndrome, a virus that attacks the nervous system. As a result of his hospitalization for Gullian-Barre Syndrome, plaintiff was on FMLA leave from February 13, 2005 until April 11, 2005. He returned to work on April 11, 2005 on light duty status for approximately two months. When Plaintiff returned to work, he was able to perform his work duties using oxygen. Plaintiff usually worked with a "helper." He had two or three helpers at the Meriden plant, prior to 2001, and one helper after PTMW moved its plant to Topeka. These helpers performed the same work that plaintiff performed.

Janice Bates is defendant's Human Resources Manager; she had formal dealings with

---

[16]Defendant did not attach any exhibits to either its memorandum in support of summary judgment or its reply. Yet, defendant minimally cites to various deposition transcripts, some of which are attached to plaintiff's response brief. To the extent these excerpts are included in plaintiff's attached exhibits and readily ascertainable, the Court will consider them. The Court is also mindful that, as a movant that does not carry the burden of proof, defendant may meet its initial summary judgment burden by pointing to a lack of evidence on an essential element of plaintiff's claim. Still, defendant's attempt to controvert plaintiff's additional statements of fact by simply stating "controverted" with no further explanation or citation to the record is unavailing. These facts are deemed admitted for purposes of summary judgment, to the extent they are supported by the record and material to the Court's disposition of the motion.

plaintiff for the first time when he took FMLA leave in 2005.  To her knowledge, plaintiff was a good employee for many years who performed his job.  Defendant never had an issue with the quantity or quality of plaintiff's work.  Defendant has a progressive disciplinary system that begins with an oral warning and ends with termination.  If an employee is not doing the job properly, it would fall within the progressive disciplinary system.  Between April 2005 and April 2006, defendant did not issue any written disciplinary action, written warning or otherwise notify plaintiff in writing of any problems with his work performance.  Jeff Lane, plaintiff's supervisor never documented any problems with plaintiff's production or job performance and believes that he was a good overall employee.

At some point, Bates attended a meeting with Jeff Lane and Gantz, plaintiff's supervisors, who had been monitoring plaintiff.  Bates recalls a concern for plaintiff's safety among those at the meeting.  Specifically, Bates was concerned that plaintiff would hurt another person if he was operating a forklift and passed out.  Yet, Bates was unaware of any report that plaintiff had ever passed out or put another person in danger.  She was unaware of any medical limitations on plaintiff and she had no objective evidence that plaintiff posed a threat to himself.

In the first part of April 2006, Bates recalls that plaintiff made a phone call to her and said, "please don't ask me to do any more than what I'm doing[.] . . . And if you allow me to continue doing what I'm doing, I can continue working[.]"[17]  Bates testified at her deposition that her response was, "I said, okay.  I don't think I really had a response, I was kind of shocked.  I wasn't expecting it, and I don't believe I said anything back to him.  Thanks for calling."[18]  She

---

[17](Doc. 37, Ex. B at 130.)  No preceding context was provided by plaintiff in Ex. B.

[18]*Id.* at 130–31.

5

stated that she did not know what he was and was not doing, so she took this request to plaintiff's manager. The next action or contact with plaintiff was "to bring him in to be fired."[19] Bates did not engage him in any kind of interactive process to determine what he could and could not do.

Plaintiff understands that his employment at PTMW ended because he may fall and hurt himself. At the time that plaintiff was terminated, he was working forty hours per week. Plaintiff applied for unemployment compensation with the Kansas Department of Labor. On May 12, 2006, plaintiff was notified that he would be allowed unemployment compensation. Bates makes the determination for defendant about whether to appeal an unemployment benefits decision. Because Bates has never felt that defendant wrongly terminated an employee, she has decided to appeal every unemployment application. Defendant appealed plaintiff's entitlement to unemployment benefits. Plaintiff was ultimately denied unemployment benefits.

## III. Discussion

### A. *ADA Claims*

The Pretrial Order lists plaintiff's first "theory of recovery" as "Americans with Disabilities Act," and references Count I of the Complaint. The parties agreed that this theory included four elements that they enumerated in the Pretrial Order.[20] In his summary judgment response, plaintiff clarifies that he has asserted three claims under the ADA: discrimination, retaliation and failure to accommodate.

---

[19]*Id.* at 134.

[20](Doc. 33 at 9–10.)

6

The ADA prohibits employers from discriminating on the basis of disability.[21] The elements of a *prima facie* case of ADA discrimination are: (1) plaintiff is a disabled person as defined by the ADA; (2) plaintiff is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) plaintiff suffered discrimination by an employer or prospective employer.[22] Defendant does not dispute that plaintiff is a disabled person as defined by the ADA.

Defendant's sole argument on summary judgment with regard to the ADA claim is that plaintiff could not perform the essential functions of his job. The ADA required defendant to allow plaintiff to continuing working "if, through reasonable accommodations, he could fulfill the essential functions of the position. To facilitate the reasonable accommodation, the federal regulations implementing the ADA envision an interactive process that requires participation by both parties."[23]

Defendant argues that plaintiff testified he could only perform his job as a shipping and receiving laborer with a "helper" and that meeting productivity standards is an essential function of each employee's job. Defendant asserts that PTMW sought to increase efficiency and profits by ensuring that every position in the company was staffed by persons who could independently complete all of their tasks. But defendant submits no evidence to support these assertions.

---

[21]42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").

[22]*Zwygart v. Bd. of County Comm'rs of Jefferson County, Kan.*, 483 F.3d 1086, 1090 (10th Cir. 2007); *Bones v. Honeywell, Int'l, Inc.*, 366 F.3d 869, 877–78 (10th Cir. 2004).

[23]*Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cri. 2004).

Defendant further contends that accommodating plaintiff by providing him with a "helper" would alter the nature of the warehouse operation, making it an unreasonable accommodation. Again, defendant submits no evidence to support this assertion. Oddly, defendant contends that "[t]he record is replete with evidence that the position of shipping and receiving laborer is designed to be filled by one person."[24] Yet, defendant provides no record at all, much less a record that includes such evidence.

Even if defendant had met its initial summary judgment burden, plaintiff has come forward with evidence that creates a genuine issue of material fact about whether plaintiff was qualified with or without reasonable accommodation to perform the essential functions of his job. Plaintiff submits his own deposition testimony, stating that he had two or three helpers at the Meriden plant (prior to 2001) and one at the Topeka plant prior to his hospitalization. Plaintiff also submits Jeff Lane's testimony that plaintiff had a helper prior to his hospitalization. Viewing the evidence in the light most favorable to plaintiff, this evidence creates a genuine issue of material fact about whether he was qualified to perform his essential job functions with reasonable accommodations. If he was provided with a helper prior to his hospitalization, a reasonable jury could infer that such an accommodation was reasonable after the onset of his disability. On this record, the Court finds that summary judgment is inappropriate on plaintiff's ADA theory of relief.

**B.    FMLA Claims**

The FMLA entitles a qualified employee to up to twelve weeks of leave during any

---

[24](Doc. 35 at 6.)

twelve month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."[25] In addition to the leave, an eligible employee is entitled to be restored to the same or an equivalent position upon return from leave.[26] Plaintiff asserts his FMLA claims under two theories: (1) interference under § 2615(a)(1), and (2) retaliation under § 2615(a)(2). Defendant argues that summary judgment should be granted in its favor on both claims because (1) there is no evidence that plaintiff requested or provided defendant with notice of his need for FMLA leave, and , (2) there is no causal nexus between plaintiff's protected activity and his termination. Although defendant conflates plaintiff's claims, the Court discusses each claim in turn and applies defendant's arguments to each.

### 1. Interference

Under the interference theory, if an employer interferes with an employee's FMLA-created right to a medical leave, it has violated the FMLA, regardless of its intent.[27] In such a case, the employee must demonstrate his entitlement to the disputed leave by a preponderance of the evidence.[28] Defendant argues that plaintiff can point to no evidence that he was entitled to FMLA leave. A *prima facie* case of interference requires a showing that: (1) plaintiff was entitled to FMLA leave; (2) that an adverse action by the employer interfered with plaintiff's right to take FMLA leave; and (3) that the employer's adverse action was related to the exercise

---

[25] 29 U.S.C. § 2612(a)(1)(D).

[26] *Id*. § 2614(a)(1)(A)-(B).

[27] *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

[28] *Id*.; *see Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008).

9

or attempted exercise of plaintiff's FMLA rights.[29] If plaintiff has shown the first two elements of interference, the burden shifts to the employer to prove the third element.[30] The issue of notice "is separate from the analysis of the *substantive* claim than an employer interfered with the exercise of an employee's FMLA rights."[31]

Defendant argues that plaintiff never provided notice that he was requesting FMLA leave in 2006. Plaintiff responds that he was entitled to intermittent leave or reduced hours due to his serious health condition.

> Eligible employees may take FMLA leave on an intermittent or reduced schedule basis when medically necessary due to the serious health condition of a covered family member or the employee or the serious injury or illness of a covered servicemember. See § 825.202. Eligible employees may also take FMLA leave on an intermittent or reduced schedule basis when necessary because of a qualifying exigency. If an employee needs leave intermittently or on a reduced leave schedule for planned medical treatment, then the employee must make a reasonable effort to schedule the treatment so as not to disrupt unduly the employer's operations.[32]

The notice regulation on foreseeable leave provides:

> An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is foreseeable based on an expected birth, placement for adoption or foster care, planned medical treatment for a serious health condition of the employee or of a family member, or the planned medical treatment for a serious injury or illness of a covered servicemember. If 30 days notice is not practicable, such as

---

[29]*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).

[30]*See Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

[31]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 n.2 (10th Cir. 2004) (emphasis in original).

[32]29 C.F.R. § 825.203.

10

> because of a lack of knowledge of approximately when leave will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable. For example, an employee's health condition may require leave to commence earlier than anticipated before the birth of a child. Similarly, little opportunity for notice may be given before placement for adoption. For foreseeable leave due to a qualifying exigency notice must be provided as soon as practicable, regardless of how far in advance such leave is foreseeable. Whether FMLA leave is to be continuous or is to be taken intermittently or on a reduced schedule basis, notice need only be given one time, but the employee shall advise the employer as soon as practicable if dates of scheduled leave change or are extended, or were initially unknown. In those cases where the employee is required to provide at least 30 days notice of foreseeable leave and does not do so, the employee shall explain the reasons why such notice was not practicable upon a request from the employer for such information.
>
> (b) As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case. When an employee becomes aware of a need for FMLA leave less than 30 days in advance, it should be practicable for the employee to provide notice of the need for leave either the same day or the next business day. In all cases, however, the determination of when an employee could practicably provide notice must take into account the individual facts and circumstances.
>
> (c) Content of notice. An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.[33]

Defendant has met its initial summary judgment burden on this issue by pointing to a lack of evidence that plaintiff provided any notice to defendant of his request for intermittent leave or a reduced work schedule.[34] The burden therefore shifts to plaintiff to point to evidence in the

---

[33] *Id.* § 825.302.

[34] In addition to pointing to a lack of evidence that plaintiff provided notice, defendant cites to plaintiff's deposition testimony. However, defendant failed to attach this testimony to its motion so the Court may not consider it.

record that he provided adequate notice of a request for FMLA leave. Plaintiff points the Court to Janice Bates' deposition testimony, where she recalls that plaintiff called her in April 2006 and said: "please don't ask me to do any more than what I'm doing . . . [,] if you allow me to continue doing what I'm doing, I can continue working[.]"[35] Plaintiff argues in his response that, on the basis of this deposition testimony alone, "clearly Mr. Gritten requested to be allowed to work at a reduced schedule than what defendant wanted." The Court disagrees. While verbal notice is acceptable under 29 C.F.R. § 825.302, it must make the employer aware that the employee needs FMLA-qualifying leave. There is no evidence in the record that plaintiff sought FMLA leave, on a reduced schedule or otherwise, much less that he provided defendant with notice of his intent to take leave under the applicable standard set forth in the regulations. Construing the evidence in the light most favorable to plaintiff, the evidence merely shows that plaintiff requested that he not be required to do additional work; no reasonable jury could conclude that his statement to Bates constituted a request for FMLA leave.

Accordingly, plaintiff cannot establish a claim for interference and summary judgment is granted in favor of defendant on this claim.

### 2. Retaliation

Plaintiff contends that he suffered unlawful retaliation when he was terminated by defendant. Retaliation claims under the FMLA based on circumstantial evidence are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*.[36] Under this analysis, the

---

[35](Doc. 37, Ex. B at 130.)

[36]*Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

plaintiff bears the initial burden of establishing a *prima facie* case of retaliation.[37] To state a *prima facie* case of retaliation, plaintiff must show that: (1) he engaged in a protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.[38] If the plaintiff does so, then the defendant must offer a legitimate, non-retaliatory reason for the employment action.[39] The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.[40]

Plaintiff's retaliation theory is the same as his interference theory: defendant terminated plaintiff in retaliation for his request for a reduced schedule or for intermittent leave. Defendant argues that plaintiff did not engage in protected activity because he did not take or even request FMLA leave on an intermittent basis or otherwise. For the reasons set forth on the interference claim, the Court agrees. There is no genuine issue of material fact about whether plaintiff provided notice sufficient to make defendant aware that he required FMLA-qualifying leave.[41] For the reasons already explained, plaintiff cannot establish the first element of the *prima facie* case.

Defendant argues further that plaintiff cannot establish a causal nexus between the

---

[37]*Id.*

[38]*Id.* at 1171 (citation omitted).

[39]*Id.*

[40]*Id.*; *see also Gunnell v. Utah State Coll.*, 152 F.3d 1253, 1263 (10th Cir. 1998) (explaining that plaintiff has the ultimate burden of demonstrating that the challenged employment decision was the result of intentional retaliation).

[41]*See* 29 C.F.R. § 825.302; *see also Ney v. City of Hoisington, Kan.*, 264 F. App'x 678, 682 (10th Cir. 2008) ("We are unaware of any authority that permits an employee to bypass the FMLA's notice and certification provisions.").

13

FMLA leave plaintiff took in 2005 and his termination in 2006. Assuming this is true, it is not the basis for plaintiff's claim. His claim is that he requested a reduced leave schedule shortly before he was terminated. Therefore, defendant's argument on this point is misplaced. Nonetheless because a reasonable jury could not conclude that plaintiff engaged in protected activity under the FMLA, summary judgment is warranted.

C.      *Unemployment Claim*

Plaintiff articulates this claim in the Complaint as "RETALIATION UNEMPLOYMENT COMPENSATION." The Pretrial Order sets forth a list of elements for this claim with no citation. Plaintiff's factual theory is stated in the Pretrial Order as follows:

> In attempting to deprive Mr. Gritten of unemployment benefits, defendant engaged in retaliatory conduct as a result of Mr. Gritten's participation in protected activity. Defendant's outrageous conduct in attempting to deprive Mr. Gritten of benefits to which he was entitled under Kansas law is further evidence of defendant's animosity towards Mr. Gritten as a result of a protected activity. Defendant's lack of compassion and callous retaliatory acts were designed to inflict financial injury upon Mr. Gritten and were accomplished as an attempt to improperly save money by defendant.

Defendant argues on summary judgment that plaintiff has failed to show that his unemployment benefits were denied or suspended due to any action by defendant. It is unclear from the Complaint and the Pretrial Order whether plaintiff is alleging a distinct theory of retaliation under the FMLA or a separate claim based on state law.[42] Neither party bothered to elucidate the nature of this claim in the summary judgment briefs.

---

[42]The Pretrial Order states that jurisdiction is based on "28 U.S.C. § 1331, 28 U.S.C. § 1332, and/or 28 U.S.C. § 1367." (Doc. 33 at 2.)

Courts in this district have previously found that Kansas would recognize a claim for unemployment retaliation where a plaintiff alleges discharge because of filing an unemployment claim, or alleges discharge in retaliation for testifying at an unemployment compensation hearing.[43] While it is unclear whether such a claim would be recognized under the circumstances of this case, the Court does not decide that issue since it was not raised by defendant.

Instead, defendant cites cases construing the materially adverse action element of a *prima facie* case of retaliation under Title VII.[44] That line of cases clarifies that a plaintiff may meet the adverse action prong of a Title VII retaliation claim by showing that unemployment benefits were denied or suspended when the employee exercised his or her protected rights under Title VII.[45] To the extent this law applies to plaintiff's ambiguous claim in this case, summary judgment is inappropriate. Defendant rests its argument on the fact that the Kansas Department of Labor denied plaintiff's application for unemployment benefits on the basis of a written statement provided by plaintiff's medical provider that he was medically unable to work. But defendant submits no evidence to support this assertion. In contrast, plaintiff comes forward with evidence suggesting that his claim was denied because defendant appealed the decision. This may be sufficient to create a genuine issue of material fact, depending on the nature of plaintiff's claim. On this scant record, the Court denies summary judgment on this theory of relief.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant PTMW Inc.'s

---

[43]*Koehler v. Hunter Care Ctrs., Inc.*, 6 F. Supp. 2d 1237, 1242 & n.1 (D. Kan. 1998) (collecting cases).

[44]*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006), *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1087 (10th Cir. 2007).

[45]*Williams*, 497 F.3d at 1087.

Motion for Summary Judgment (Doc. 34) is granted in part and denied in part. It is granted on plaintiff's FMLA claims and denied on plaintiff's ADA and unemployment compensation claims.

**IT IS SO ORDERED**.

Dated: <u>March 3, 2010</u>

<u> S/ Julie A. Robinson           </u>
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE